Day, J.
 

 The controversy involved herein relates to bns transportation authorized by the Public Utilities Commission over am intercity route along a state road, and does not involve questions arising on purely intracity transportation.
 

 The certificate of public convenience and necessity issued by the Public Utilities Commission of Ohio to the defendants in error fixed a route from the city of Lancaster, Ohio, through the city of Nelsonville, via “Washington street to Fountain square, thence Columbus street to Jefferson street, thence Watkins street to Chestnut street, thence to corporation line,” thence on a fixed route to the courthouse in the city of Athens, Ohio; the termini of said route being im the city of Lancaster and the city-of Athens respectively.
 

 The council of the city of Nelsonville enacted an ordinance designated as:
 

 “Am ordinance restricting the transportation of passengers, freight and express by motor vehicles on certain streets, alleys and avenues in the city of Nelsonville, Ohio.”
 

 It is recited in the preamble to said ordinance:
 

 “The streets on which are located street car tracks are amply and sufficiently provided with the transportation facilities for the convenience of the citizens of said city and the public generally, and * # * the streets aforesaid are now being used by motorbusses and other vehicles im the carriage
 
 *224
 
 of passengers, freight and express for hire, thereby increasing the traffic on such streets and making the same congested and dangerous to pedestrians and the public generally.”
 

 The ordinance then proceeds to prohibit the operation of any motorbusses on any street or avenue “On, or along or over which street car or interurban car lines are now constructed and on, or along or over which street cars or interurban ears are operated.”
 

 The provisions of the ordinance aforesaid exclude defendants in error, from operating their busses over and along the following streets of the city of Nelsonville, which are designated in the route of said defendants aforesaid and described in their certificates of convenience and necessity as provided by the commission, namely, those parts of Columbus, Jefferson, Watkins, and Chestnut streets. The question in this case then becomes, how far may the city authorities of the municipality of Nelsonville interefere with or change this route fixed by the Public Utilities Commission while the same is passing through the city of Nelsonville?
 

 We think that Section 614-86, G-eneral Code, is applicable to the solution of the case at bar, and that the city of Nelsonville had a right to make reasonable police regulations within its boundaries with reference to traffic on its streets and the use thereof by the public. This would mean such regulations with reference to right or left turns, one way streets, stops at certain points where safety and local conditions required it, and such other matters of purely local concern which affect peculiarly the municipality. These regulations
 
 *225
 
 should he reasonable in character and not designed to nullify and set aside the orders of the Public Utilities Commission by materially interfering with the efficiency of the utility as authorized by the Public Utilities Commission.
 

 The Public Utilities Commission should at all times give due consideration to local conditions, which are best known to municipal authorities. At the same time it must not be overlooked that the Public Utilities Commission is intrusted with the duty in the interest of the public of securing for the public adequate service from public utilities, and for the convenience, necessity, and safety of the public in matters of travel upon the public highways of the state. To that end by Section 614-86, General Code, the state, through the Legislature, vested with the Public Utilities Commission the power and authority “to supervise and regulate each such motor transportation company * # * to regulate the service and safety of operation * * # to prescribe safety regulations, and designate stops for service and safety on established routes.”
 

 This power, as above indicated, must be exercised consistently with the right of municipalities through which any such route passes to enact reasonable police regulations. What does this record show? Among other things by the agreed statement of facts, it appears that to divert this bus transportation line from the route fixed by the Public Utilities Commission, the busses would have to travel a considerable distance out of the way of the route prescribed by the commission over a dirt road wholly unimproved, in some places
 
 *226
 
 narrow and full of ruts. It also appears that these motorbusses are operated on a 30-minute schedule between Athens and Lancaster. This species of detour, especially when the unimproved roads were muddy, rough, and in a condition difficult for motor travel, must materially interfere with the efficiency of the utility and render the service to the public, authorized by the commission, less effective to the public.
 

 The record fails to show that the safety of pedestrians upon the street and the congested condition of travel upon the street require any such detour from the established route in the city of Nelsonville; nor is there any tender of evidence on the part of the city to show such fact, if it could have been shown. We think the record clearly evinces a condition as evidenced by the remark of the presiding judge of the court of appeals that:
 

 “The council enacted the ordinance for the protection of the street railway company solely, and that the things stated in the ordinance as reasons for its enactment, namely to relieve congested traffic, etc., are not true.”
 

 Frankly then the controversy must narrow down to one of power of the municipality to pass such an ordinance. In order to justify the same, it must be a reasonable police regulation and as applied to the situation of a transportation line, which is interurban and not purely intraurban, we are constrained to the conclusion that its enactment was beyond the letter and spirit of Section 614-86, General Code, authorizing municipalities to pass reasonable police regulations and, being inconsistent with the provisions of the act in ques
 
 *227
 
 tion, the Court of Appeals was right in reaching the conclusion that it did, to wit, in restraining the city from enforcing the ordinance in question.
 

 We are cited to the case of
 
 Village of Perrysburg
 
 v.
 
 Ridgway, Taxpayer,
 
 108 Ohio St., 245, 140 N. E., 595. We do not regard this case as controlling, for the reason that the same was decided before Section 614-86, General Code, came into effect, and it is further to be noted that on page 259, 140 N. E., 599, in the majority opinion, it is said:
 

 “We are not passing upon the question whether or not the municipality saw fit to interfere with through traffic over its streets by entirely prohibiting the same. That question is not here.”
 

 The majority of the court are of the opinion that the judgment of the Court of Appeals should be affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias and Robinson, JJ., concur.
 

 Marshall, C. J., Allen and Kinkade, JJ., dissent.