THE CINCINNATI AND SUBURBAN BELL TELEPHONE COMPANY *v.*
THE CITY OF CINCINNATI.

(No. 5066—Decided April 10, 1964.)

Probate Court of Hamilton County.

160

*Messrs. Frost & Jacobs,* for plaintiff.

*Mr. William A. McClain,* city solicitor, *Mr. Robert J. White,* special counsel, *Messrs. Steer, Strauss & Adair* and *Mr. James J. Ryan,* for defendant.

DAVIES, J. This matter came before the court upon the demurrer of the defendant, the City of Cincinnati, to the petition of the plaintiff, The Cincinnati and Suburban Bell Telephone Company.

In its petition the plaintiff alleges that it is a corporation organized and doing business under the laws of Ohio; that it is engaged in the telephone business and part of its operations is in Hamilton County, Ohio; that it operates its business by the use, among other things, of poles, wires, circuits, cables, conduits, and other similar equipment; that for a number of years it has owned and used in the operation of its business equipment located in Linn Street in Cincinnati; that recently, as a part of an urban renewal project, the defendant decided to relocate Linn Street including a part thereof on which the plaintiff has equipment for the conduct of its business; that defendant requested plaintiff when it relocates its equipment on the relocated part of Linn Street to place the wires underground as defendant did not desire to have any overhead utility equipment in the urban renewal area; that plaintiff advised the defendant that it was willing to cooperate with it and place its equipment on Linn Street underground provided the defendant would pay it the difference in cost between locating said equipment in Linn Street as overhead equipment and underground equipment, which the defendant refused to do; and that on April 16, 1963, plaintiff corporation filed an application with defendant for a permit to place 10 of its poles on the relocated Linn Street together with the necessary anchors to be used in connection with said poles, and under date of May 3, 1963, defendant city, through George Howie, its director of public utilities, advised plaintiff that the application for such permit was rejected and returned the same because defendant had decided that it wanted all underground equipment in the urban renewal area. Finally, the plaintiff, in the prayer of its petition, has requested the court for an order setting forth in what mode the plaintiff's lines shall be constructed along relocated Linn Street and for

such other relief to which the plaintiff is entitled including its costs.

The city of Cincinnati, in support of its demurrer, contends that the determination by the city that telephone wires within the urban renewal area shall be placed under the public street rather than over it constitutes an exercise of a power of local self-government granted to municipal corporations by the people of Ohio in Section 3, Article XVIII of the Ohio Constitution; that it is the exercise of a power of local self-government other than the police power and is, therefore, beyond the control of any statute enacted by the General Assembly; and that for these reasons, the plaintiff has no right to demand that its wires go in any particular place in relation to the city streets or to question the designation of such place by the city, and that any state statute purporting to confer such rights is unconstitutional because it conflicts with said portion of the Home-Rule Amendment.

The plaintiff argues that the city's requirement that telephone lines be placed beneath the surface of the relocated portion of Linn Street is not an exercise of the city's powers of local self-government under the first clause of Section 3, Article XVIII of the Ohio Constitution, but is an exercise of the city's police powers under the second clause of said Section 3, is in conflict with the general laws of Ohio, and the defendant's demurrer, therefore, should be overruled.

There are numerous reported cases involving the authority of a municipality to enact legislation under constitutional "home-rule" powers which conflict with the provisions of a general law passed by a state legislature.

In Ohio, it often is necessary for a court, in resolving the respective legislative powers of the state and a municipality on a given subject, to determine if the municipality is acting under a power of local self-government or under its local police power both of which powers are extended to it by Sections 3 and 7 of Article XVIII of the Constitution.

Said Section 3 provides that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Said Section 7 provides that "any municipality may

frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government.''

Section 4931.01, Revised Code, provides that ''a telegraph company or any person may construct telegraph lines upon and along any of the public roads and highways, and across any waters, within this state, by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of such lines. Such lines shall be constructed so as not to incommode the public in the use of the roads or highways, or endanger or injuriously interrupt the navigation of such waters. This section does not authorize the erection of a bridge across any waters of this state.'' Section 4931.01, Revised Code, is made applicable to telephone companies by Section 4931.11, Revised Code. Section 4931.08, Revised Code, reads as follows: ''When lands authorized to be appropriated to the use of a telegraph company are subject to the easement of a street, alley, public way, or other public use, within the limits of a municipal corporation, the mode of use shall be such as is agreed upon between the municipal authorities and the company. If they cannot agree, or if the municipal authorities unreasonably delay entering into an agreement, the probate court of the county shall, in a proceeding instituted for the purpose, subject to Section 2709.10, Revised Code, direct in what mode the telegraph line shall be constructed along such street, alley, or public way, so as not to incommode the public in the use of it. * * *.'' Section 4931.20, Revised Code, which became effective October 1, 1953, provides, among other things, that ''any company owning and operating a telephone exchange or doing a telegraph business, in any municipal corporation in this state, may construct and maintain underground wires, pipes, conduits, and other fixtures for containing, protecting, and operating such wires, in the streets and public ways of such municipal corporation, when the consent of such municipal corporation has been obtained. * * *.'' Section 4931.24, Revised Code, which became effective October 1, 1953, provides that ''no person shall erect a telegraph or telephone pole within that portion of a municipal corporation where subways have been constructed, unless such pole is required for distributing wires from such subways to subscribers' stations and is located in an alley if practicable, or

shall within such municipal corporation, construct or maintain underground wires, or pipes, conduits, and other fixtures for containing, protecting, and operating such wires, in the streets and public ways thereof, without obtaining the consent of such municipal corporation.''

In summary, what is now Section 4931.01, Revised Code, was originally enacted in 1852. In 1865, provisions for reference to the Probate Court were added for a means of settling disputes that might arise between telegraph companies and municipalities concerning the use of streets for telegraph facilities. In 1887, the statutes were extended to include telephone companies. In 1891, Section 4931.20, Revised Code, was enacted to permit a telephone or telegraph company with municipal consent to place wires, pipes and conduits underground. The home-rule provisions of Sections 3 and 7 of Article XVIII of the Constitution were adopted on September 3, 1912.

The city of Cincinnati has passed an ordinance which requires the plaintiff telephone company to replace its lines underground on relocated Linn Street. The plaintiff, as stated, says that the defendant is without authority to pass such an ordinance because its subject matter comes under the classification of a local police regulation under Section 3, Article XVIII of the Constitution which is in conflict with the provisions of a general law (Section 4931.01, Revised Code) passed by the state Legislature which provides that it may construct its lines upon and along (not under) any of the public roads and highways within Ohio. The plaintiff further contends that since the city and it cannot agree upon the mode of use to be made by the company in constructing its lines upon and along relocated Linn Street, this (the probate) court has authority, under the provisions of Section 4931.08, Revised Code, to direct in what mode the lines shall be constructed along such street.

In cases involving a municipality's constitutional legislative authority courts have held that this authority includes the following subjects, although the provisions of the legislation are in conflict with general laws passed by the state Legislature:

(a) A sale of real estate by a municipality. *Hugger* v. *City of Ironton et al*, 83 Ohio App. 21, 82 N. E. 2d 118. Affirmed in 148 Ohio St. 670, 76 N. E. 2d 397. (b) The granting of permission and the making of a contract to construct and operate a

street railway in the streets of a city or village. *Billings et al.* v. *The Cleveland Ry. Co.*, 92 Ohio St. 478, 111 N. E. 155. (c) Right of electric light and power companies to occupy streets of municipalities. The court pointed out (page 440) that there is a clear distinction between telegraph and telephone companies and electric light companies because telegraph and telephone systems pervade the entire state while, as a general rule, an electric light company is formed for the purpose of furnishing light to the municipality in which it is located and to its people. *Lighting Co.* v. *Upper Sandusky*, 93 Ohio St. 428, 113 N. E. 402. (d) Authority to appoint administrative agencies not only to levy but to supervise and adjust levies between its taxing units. *State, ex rel. City of Toledo,* v. *Cooper,* 97 Ohio St. 86, 119 N. E. 253. (e) Operation of street cars in municipalities. *Leis* v. *Cleveland Ry. Co.*, 101 Ohio St. 162, 128 N. E. 73, in which the court held that in Section 3, Article XVIII of the Constitution, the words "general laws" refer to laws passed by the Legislature which are of general application throughout the state and that when a municipality in the exercise of its constitutional authority has adopted local police regulations to promote the public health and safety, every intendment is to be made in favor of the lawfulness of such regulations, and courts will not interfere except in clear cases of violation of the authority granted. (f) Appointment of police officers. *State, ex rel.* v. *Phillips,* 168 Ohio St. 191, 151 N. E. 2d 722. (g) The regulation that municipal affairs shall be regulated by standard time. *State, ex rel.,* v. *Cincinnati,* 101 Ohio St. 354, 129 N. E. 595.

The determination of what constitutes a public municipal purpose is primarily a function of the legislative body of the municipality, subject to review by the courts, and such determination will not be overruled by the courts except in instances where that determination is manifestly arbitrary or unreasonable. The court approved an ordinance permitting off-street parking facilities for motor vehicles in order to protect and preserve the public health and safety. *State, ex rel.,* v. *Rhodes,* 156 Ohio St. 81, 100 N. E. 2d 225. Concerning the provision in Section 3, Article XVIII of the Constitution (may adopt such local police, sanitary and other similar regulations as are not in conflict with general laws), the general laws referred to are obviously such as relate to police, sanitary and other similar

regulations, and which apply uniformly throughout the state. They involve the concern of the state for the peace, health, and safety of all of its people, wholly separate and distinct from, and without reference to, any of its political subdivisions—such as regulate the morals of the people, the purity of their food, the protection of the streams, the safety of buildings and similar matters. Manifestly, therefore, it was necessary, when all powers of local self-government were conferred on municipalities, to provide that, in the adoption of police, sanitary, and similar ones, they should not conflict with general laws on the subject. *Fitzgerald* v. *Cleveland,* 88 Ohio St. 338 (at page 359), 103 N. E. 512.

In considering the powers of a city to exercise ''all powers of local self-government,'' in the case of *Froelich* v. *Cleveland,* 99 Ohio St. 376, 124 N. E. 212, the court held that when a city has adopted a charter, under which it is authorized to exercise ''all powers of local self-government,'' pursuant to the provisions of Sections 3 and 7 of Article XVIII of the Constitution, the authority to locate, establish and protect the streets within its limits resides in the municipality, and it may adopt and enforce such reasonable regulations for their proper and economic use as it deems to be proper, and that the municipality derives this authority not by grant from the Legislature, but under express authority from the people of the state given in the Constitution. The court, (pages 384, 385) pointed out that there is no language in the home-rule amendment which indicates that it was ever intended that the right of the city to exercise governmental control of the streets should end when it has located and surveyed the street, prescribed its width and grade, excavated it and put in the broken stone and concrete, laid the brick, stone or asphalt upon it, paid for all these things out of the municipal treasury and assumed full responsibility for keeping the street open, in repair and free from nuisance; and that thereafter this domestic, municipal and local concern should be subject to the uninformed supervision of a foreign authority. It, the court reasoned, is a necessary incident to the governmental power of the city to make such reasonable provisions for the proper and economic use of its streets as its close knowledge of the necessities of the situation and the structure of the streets demonstrate to be proper. The court held that the state and municipalities

may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community, but neither the state nor the municipality may make any regulations which are unreasonable. The court finally held that the means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.

*Since the instant case has come before the court upon a demurrer filed by the City of Cincinnati to the petition of the Cincinnati and Suburban Bell Telephone Company, no evidence has been presented concerning the reasonableness or unreasonableness of the city's ordinance or of general laws relating to the installation of telephone equipment upon and along or under Linn Street.*

Municipalities in Ohio are authorized to adopt local police, sanitary and other similar regulations by virtue of Section 3, Article XVIII of the Constitution, and derive no authority from, and are subject to no limitations of, the General Assembly, except that such ordinances shall not be in conflict with general laws. In determining whether an ordinance is in ''conflict'' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. A police ordinance is not in conflict with a general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law, or because certain specific acts are omitted in the ordinance but referred to in the general law, or because different penalties are provided for the same acts, even though greater penalties are imposed by the municipal ordinance. *Village of Struthers* v. *Sokol,* 108 Ohio St. 263, 140 N. E. 519.

In *Niehaus* v. *State,ex rel.,* 111 Ohio St. 47, 144 N. E. 433, the court held that Section 1035, General Code, which required the building inspection department of municipalities having a regularly organized building inspection department to approve the plans for the erection of a public school building, is a state police regulation, and the power of the General Assembly to enact such legislation is in no sense abridged by the provisions

of Section 3, Article XVIII of the Constitution of Ohio. The court (page 53) said "the only feature of the sovereign power which is surrendered by the so-called 'home rule' provision of the Constitution is that which relates solely to local government." In *Cincinnati* v. *A. T. & T. Co.,* 112 Ohio St. 493, 147 N. E. 806, the court held that the power granted to the municipality by Section 3, Article XVIII of the Constitution, to lay an occupational tax in the exercise of its powers of local self-government, does not extend to fields within such municipality which have already been occupied by the state.

Telephone companies obtain power to construct their lines along the streets and public ways of municipal corporations from the state by virtue of Sections of the Revised Statutes, 3454 to 3471-8, inclusive, and not from the municipal authorities. *Farmer et al.* v. *Telephone Co.,* 72 Ohio St. 526, 74 N. E. 1078; *Paulding Tel. Co.* v. *Mutual Tel. Assn.,* 14 O. N. P. (N. S.) 616; *Telephone Co.* v. *Telephone Co.,* 16 O. N. P. (N. S.) 177.

Municipalities can make reasonable local police regulations within their respective boundaries so long as the municipality does not interfere with the general powers of the Public Utilities Commission and may, by suitable police regulations, control, direct, and manage their streets and the traffic thereon, to make the streets less congested and less dangerous to pedestrians and the public generally, but a city may not materially interfere with the general efficiency of the utility involved. In his concurring opinion, Judge Marshall, in commenting on the case of *Billings* v. *Cleveland Ry. Co., supra,* page 79, observed that the effect of the *Billings* decision was to place the laws and ordinances of the city beyond the control of the laws of the state in the matter of the use and occupancy of streets of a city by a public utility, and said that "in that respect the case involves a parallel principle" to that decided in the *Lorain St. Rd. Co.* case and that "the per curiam of the majority (in the *Lorain St. Rd.* case) must therefore be held to have overruled the *Billings* case, without any mention of it." *Lorain St. Rd. Co.* v. *Utilities Comm.,* 113 Ohio St. 68, 148 N. E. 577; *Nelsonville* v. *Ramsey et al,* 113 Ohio St. 217, 148 N. E. 694; *Columbus Gas & Fuel Co.* v. *P. U. C. O.,* 127 Ohio St. 109, 187 N. E. 7. A municipal ordinance passed under the home-rule amendment must not be arbitrary, discriminatory, capricious or unreasonable, and must bear a real and substantial

relation to the health, safety, morals or general welfare of the public. A municipal ordinance limiting and fixing the hours during which a barber shop may remain open for business is not a valid exercise of the police power and is in contravention of the provisions of the Ohio Constitution. *Cincinnati* v. *Correll*, 141 Ohio St. 535, 49 N. E. 2d 412; *Olds* v. *Klotz*, 131 Ohio St. 447, 3 N. E. 2d 371; *Benjamin* v. *Columbus*, 167 Ohio St. 103, 146 N. E. 2d 854. The "police power" is the power to guard the public morals, safety, and health, and to promote the public convenience and the common good. It is within the power of the state to devise the means to be employed to those ends so long as they do not go beyond the necessities of the case and have a real and substantial relation to the object to be accomplished. *King* v. *Horton*, 116 Ohio St. 205, 156 N. E. 124. Under its police power a municipality has the power to enact legislation designed to regulate trailer camps or trailer parks, but such legislation may not be in conflict with the general laws of Ohio with respect to such regulation. The underlying and controlling problem is whether the public health, safety or welfare of the municipality is affected by the growth of permanent settlements within the municipality. The court (page 127) pointed out that existing statutes did not pre-empt the entire field of legislation with respect to trailer camps and to bar municipalities from adopting regulations on the same subject so far as such local regulations were not in conflict with general laws. *Stary* v. *Brooklyn*, 162 Ohio St. 120, 121 N. E. 2d 11. The power of police regulation throughout the state, is vested in the Legislature and, in the exercise of this power, railway companies may constitutionally be required to light such portions of their railways as are within a city or incorporated village. *Railroad Co.* v. *Sullivan*, 32 Ohio St. 152.

By virtue of Section 3, Article XVIII of the Constitution of Ohio, conferring upon municipalities all powers of local self-government and authorizing them to adopt and enforce local police regulations, fortified by Sections 715.22 and 723.01, Revised Code, prescribing the rights and duties of municipalities with respect to their streets, a municipal corporation may by ordinance reasonably control the weights of vehicles using its highways and streets, notwithstanding that such ordinance fixes lesser weights than those permitted by statute. *Union Sand &*

*Supply Corp.* v. *Village of Fairport et al.,* 172 Ohio St. 387, 176 N. E. 2d 224. "All powers of * * * self-government" as set forth in Section 3 of Article XVIII of the Ohio Constitution include the power of eminent domain. *The State, ex rel. Bruestle, Solicitor,* v. *Rich, Mayor, et al.,* 159 Ohio St. 13, 110 N. E. 2d 778.

In *Wachendorf* v. *Shaver,* 149 Ohio St. 231, 78 N. E. 2d 370, it was held that "the court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." In *Daily et al.* v. *State,* 51 Ohio St. 348, 37 N. E. 710, the court held that the Legislature may authorize the construction of a telegraph line by a telegraph company upon a public highway, in such manner as not to incommode the public in the use of such highway.

In the case of *Zanesville* v. *Telegraph and Telephone Co.,* 64 Ohio St. 67, 59 N. E. 781, Zanesville Telegraph and Telephone Company made application to the city council of Zanesville in order that an agreement might be arrived at in regard to the mode of constructing its lines in the streets and alleys of the city. The company presented a proposed ordinance which the council of Zanesville declined to accept and adopted an ordinance imposing different and more onerous conditions, among others, one requiring the company's lines to be placed underground. The provisions of this ordinance were not satisfactory to the company and a petition was filed in the Probate Court for an order directing in what mode the company's lines should be constructed along the streets and public ways of the city. The court held that, under the statute, the Probate Court had complete jurisdiction to direct in what mode the lines of the company should·be constructed when the municipal authorities and the company failed to agree. The court (page 80) held that it is not the right to use the streets that is made the subject of agreement between the company and the municipal authorities, or of determination by the court. That right, the court stated, is

granted to the company directly by the Legislature, and it is not made to depend upon any consent or agreement on the part of the municipality. It is only the mode of such use that becomes the subject of agreement or judicial determination.

In a case construing a statute similar to the Ohio statute (Section 4931.08, Revised Code), the court in the case of *State. ex rel.*, v. *City of Red Lodge,* 30 Mont. 338, 76 Pac. 758, stated (pp. 345 and 346) that Section 1000 of the Montana laws "not only grants the right and privilege of constructing telephone lines, but also defines the manner of their construction 'by the erection of necessary fixtures, including posts, piers and abutments necessary for the wires,' " that "the use of the term 'posts, piers and abutments' presupposes what is known as the 'overhead system,' " and that "the manner of constructing these lines is as much a part of this section as is the right of construction given." The court further held that under the law "the city council has a two-fold duty to perform: (1) to permit the corporation to enter the city; and (2) to designate the location of poles, abutments, etc. It does not possess the power to prohibit the one any more than it does to refuse the other. The municipality may, in the exercise of its power, prohibit the erection of these poles in places or in a manner which will incommode the public; but they cannot entirely prohibit. They can only regulate, and the regulation must be reasonable. In a sense the city is called upon to grant a privilege. Whether this privilege amounts to a franchise is not here decided. If it is a franchise, it is one which the council cannot refuse to grant under this law. It may, within the bounds of reason, determine the character and height of the poles, but it cannot totally ignore the system of construction named in the statute, and substitute one totally foreign thereto."

In *Macklin* v. *Home Telephone Co. et al.,* 1 O. C. C. (n. s.) 373, affirmed in 70 Ohio St. 507, the court held that "the right of a telephone or telegraph company to occupy and use the streets and alleys of a municipality with the fixtures and appliances necessary in the carrying on of its business is derived directly from the sovereign state by legislative grant, contained in Sections 3454 *et seq.*, Revised Code. This right is absolute and subject only to the right of the public to use the same public ways for public purposes, and to the manner of use

agreed upon between the municipal authorities and the company, or prescribed by the probate court. The power of the municipality in that behalf is exhausted when it agrees upon such mode of use.''

In the case of *Cleveland Telephone Co.* v. *Cleveland*, 98 Ohio St. 358, the court held that the regulation of rates for services rendered or commodity furnished by a public utility is an exercise of police power and that an ordinance fixing the rate that may be charged for telephone services by a telephone company within the limits of a municipality, is a local police regulation, within the meaning of that term as used in Section 3 of Article XVIII of the Constitution of Ohio. The court (p. 361) points out that the term ''police regulations,'' as used in said Section 3 of Article XVIII of the Constitution is not restricted to the narrow definition of police power, the ''power to prescribe regulations for health, safety, and morals,'' but includes ''as incident thereto police power in the broader sense of that term, which authorizes the fixing of rates that may be charged by public utilities.'' The court (p. 362) reasoned that there is no such thing as municipal police power as distinguished from state police power. The court concluded that the statutes of Ohio creating the public utilities commission, and conferring authority upon it to regulate public utilities and to fix the rate that such utilities may charge for commodity furnished or service rendered to municipalities and citizens of this state, are a valid and constitutional exercise of the police power by the general assembly of Ohio.

In an early case, which originated in Cincinnati, The Queen City Telephone Company filed a petition in the Probate Court of Hamilton County alleging that on or about October 12, 1903, it made application to Cincinnati's council to prescribe a manner of use for it of the streets of the city in constructing additional telephone lines, and at the same time transmitted to council a form of an ordinance which it was willing to accept, which proposed ordinance included the character of the poles and wires to be erected upon, as well as the construction of certain conduits under, designated streets. The application of the company (along with similar applications from two other telephone companies) was referred to a committee of council, which reported that there was not room in the streets for the

lines asked for, that it was inexpedient to make any grant or agreement, and the council rejected the application of the company. The city and the company having failed to agree on the mode of the use of the streets by the company, the matter was taken into the Probate Court. After a hearing, a decree was entered by the Probate Court in the case of *Telephone Co.* v. *Cincinnati*, 2 N. P. (n. s.) 51, granting the company the right to place conduits or subways in a part of the city, and to erect poles throughout the rest of the city. The state law at that time provided that telegraph and telephone companies could use municipal streets for the "erection of the necessary fixtures, including posts, piers, and abutments necessary for the wires." Error was prosecuted by the city to the Common Pleas Court of Hamilton County and the judgment of the Probate Court was reversed in the case of *The City of Cincinnati* v. *The Queen City Telephone Company*, 2 N. P. (N. S.) 349. The company then prosecuted error to the circuit court, in which court the judgment of the Common Pleas Court was affirmed.

Upon proceedings brought by the company to reverse the above two preceding judgments, in the case of *Telephone Co.* v. *Cincinnati*, 73 Ohio St. 64, the Supreme Court affirmed the judgments of the Circuit and Common Pleas Courts and reviewed the general state laws as they then existed (practically the same as they now exist) relative to the use to be made of municipal streets by telegraph and telephone companies. The question asked by the court and its answer (pages 79 and 80) is given in the following language: "In any event had the probate court power to grant a right to the Company to place its wires and apparatus in conduits under ground? It is believed that this point is satisfactorily answered by reference to the sections of the Revised Statutes relating to the subject of the control of streets and the construction of conduits thereunder. Section 3454, enacted in 1852, is the foundation of the right of telephone companies to use the public roads of the state. This right is there given to telegraph companies, but by Section 3471, this section, as also the entire chapter, is made to apply to telephone companies also, but telephone companies are specifically made subject to all the restrictions imposed by the chapter upon telegraph companies. Then by Section 3461, enacted in 1865, the manner of acquiring the right to use streets of a muni-

cipality is provided for. Where the lands sought to be appropriated to the use of a company are subject to the easement of a street the mode of use shall be such as shall be agreed upon between the municipal authorities and the company, and if they cannot agree then the Probate Court shall direct in what mode the line shall be constructed along such street so as not to incommode the public in the use of the street. But this use, as authorized by Section 3454, is simply 'by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires.' Applying the rule of *expressio unius est exclusio alterius*, this language by inference excludes the idea of conduits in subways. Looking for a specific provision on the subject, we find that the first which in terms covers the subject of conduits is Section 3471-1, enacted in 1891. The title of the act is 'To authorize telephone companies to place and maintain their wires under ground, when consent is had of cities where the same are situated,' and the body of the act provides that any company owning and operating a telephone exchange in any city 'may construct and maintain underground wires and pipes or conduits and other fixtures for containing, protecting and operating such wires in the streets and public ways of said city, when the consent of such city has been obtained therefor,' * * *.'' The court concluded that "the statutes of Ohio do not confer power on the probate court to grant to a telephone company the right to put its wires and apparatus in conduits under the streets of a city in the absence of consent by the municipal authorities.''

This court, as it now attempts to determine "on demurrer" if a municipal ordinance concerning the mode of use by a telephone company of municipal thoroughfares is or is not a proper exercise of a constitutional power of local self-government, can sympathize with the court in the *Toledo case* (97 Ohio St. 86, p. 91), when it observed that "it is unfortunate that the members of the constitutional convention did not more fully define the powers of local self-government committed to chartered cities, and thus relieve the courts from exercise of wide discretion and from never ending appeals for construction of the constitutional clause" found in Section 3 of Article XVIII of the Constitution of Ohio. We have outlined cases which have a bearing on the subject of what constitutes a power of local

self-government. From these cases we believe we can arrive at certain basic conclusions which will determine the controversy between the city of Cincinnati and the Cincinnati and Suburban Bell Telephone Company.

To begin, municipalities have authority to exercise all powers of local-self government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws. The business of telegraph and telephone companies generally pervade an entire state and are not local in nature. The Cincinnati and Suburban Bell Telephone Company system pervades the entire state of Ohio. The phrase "general laws" referred to in Section 3 of Article XVIII of the Constitution includes such laws as relate to police, sanitary, and other similar regulations which apply uniformly throughout the state for the peace, health, and safety of the people of its political subdivisions. A law passed by the legislature relating to the mode of construction of a telephone line by a telephone company is a "general law" which comes under the classification of a "local police, sanitary and other similar regulations" as these terms are used in said Section 3 of Article XVIII. The legislature has passed a general law, Section 4931.01, Revised Code, authorizing a telephone company to construct its lines upon and along any of the highways of a municipality so as not to incommode the public in the use of the highways. The city of Cincinnati has passed an ordinance, which will require the company to place its lines underground on relocated Linn street in Cincinnati. The city ordinance is in conflict with the said general law passed by the Ohio legislature.

Neither the city of Cincinnati in the instant case nor municipalities in reported cases have denied the authority of the legislature to pass a general law authorizing a telephone or telegraph company to use the highways of a municipality, inferentially admitting that laws relating to such companies involve regulations which apply uniformly throughout the state.

The legislature at present (Section 4931.01, Revised Code), authorizes a telephone company to construct its lines upon and along the highways of a municipality. A telephone company (Section 4931.20, Revised Code), may construct and maintain underground wires in a municipality when the consent of the

municipal corporation has been obtained. A telephone company, under existing general law and court decisions, may not construct its lines underground without consent of the municipal corporation. A municipal corporation, under existing general law, may not require a telephone company to construct its lines underground without permission of the telephone company.

The city of Cincinnati argues, soundly we believe, that in the orderly planning and development of its highways and streets, it should be permitted to pass legislation requiring, in certain instances, telephone and telegraph companies to construct their lines underground. This argument, while meritorious, should be presented to the legislature which has authority to pass such a general law and not to a court which is without authority to extend, expand or limit the authority now given to such companies or municipalities relative to the construction of telephone or telegraph lines in municipalities.

For the reasons hereinbefore discussed, we must hold that, based upon the allegations set forth in the plaintiff's petition, the ordinance passed by the city of Cincinnati requiring the Cincinnati and Suburban Bell Telephone Company to construct its lines underground in relocated Linn street is not an exercise of a power of local self-government and is in conflict with the provisions of a general law, Section 4931.01, Revised Code.

The demurrer of the city of Cincinnati, therefore, will be overruled.

*Demurrer overruled.*

(No. 5066—Decided January 21, 1965.)

Davies, J. This case originated in this court on May 13, 1963, when The Cincinnati and Suburban Bell Telephone Company filed a petition against The City of Cincinnati requesting the court for an order setting forth in what mode the company's lines should be constructed along relocated Linn Street, Cincinnati, Ohio. The city demurred to the company's petition, contending that the determination by the city that telephone wires within the urban renewal area where Linn Street is located shall be placed under the public street rather than over

it constitutes an exercise of a power of local self-government granted to municipal corporations by the people of Ohio in Article XVIII, Section 3 of the Ohio Constitution, that it is the exercise of a power of local self-government other than the police power, and is, therefore, beyond the control of any statute enacted by the General Assembly, and that, for these reasons, the company has no right to demand that its wires go in any particular place in relation to the city streets or to question the designation of such place by the city, and that any state statute purporting to confer such rights is unconstitutional because it conflicts with "said portion of the Home-Rule Amendment."

This court overruled the city's demurrer for the reason that the ordinance passed by the city requiring the company to construct its lines underground in relocated Linn street is not an exercise of a power of local self-government and is in conflict with the provisions of a general law, Section 4931.01, Revised Code.

On May 15, 1964, The city of Cincinnati filed an answer to the petition of the plaintiff, The Cincinnati and Suburban Bell Telephone Company, which answer states that:

"1. Defendant admits that plaintiff is an Ohio corporation engaged in the telephone business in Cincinnati, Hamilton County, Ohio, and that plaintiff uses poles, wires, circuits, cables and other similar equipment in the operation of its business.

"2. On May 27, 1959, by Ordinance No. 179-1959, there were enacted by the Council of the City of Cincinnati Sections 750-1, 750-3, 750-3a to 750-3j, and 750-5 through 750-29 of the Code of Ordinances of the City of Cincinnati. These sections together constituted Chapter 750 of the Code of Ordinances. On April 25, 1962, Section 750-29 was repealed and other sections were amended by Ordinance No. 154-1962. Said sections and ordinances are shown in Exhibits A and B hereto, are incorporated by reference herein, and have not otherwise been amended or repealed.

"3. Pursuant to Chapter 750 the Council of the City of Cincinnati, after public hearings, by Ordinance 332-1959 on September 30, 1959, approved and adopted an Urban Renewal Plan for the redevelopment of an area in the western basin of

Cincinnati known as Kenyon-Barr I and later known as Queensgate I. This extensive area was one primarily of aged, dilapidated, unsanitary and extremely overcrowded slum dwellings with old commercial and industrial structures mixed in. The Urban Renewal Plan called for the acquisition of almost all of the land in the area, razing of the buildings thereon, and the complete redevelopment of the area to provide sites for the construction of new residential, commercial and industrial facilities by private parties.

"4. The existing streets in the area were narrow and congested. Intersections were hazardous due to narrowness of the streets and obstructed visibility. Few off-street loading and parking facilities were available. Generally the street pattern was obsolete and incompatible with the new residential, commercial and industrial facilities which the Urban Renewal Plan contemplated would be constructed. The Urban Renewal Plan called for the almost complete elimination of the existing streets and replacement thereof with new Expressways, Major Motorways, and Local Distributor Streets. One Major Motorway was to be known as Linn Street, the same name as was borne by an old street in the area, and was to follow a right of way completely different from that of old Linn Street over land to be acquired for the purpose by the city of Cincinnati. New Linn Street, a divided highway, and old Linn Street are shown in Exhibit C hereto, which is incorporated herein by reference. Plaintiff had maintained some facilities on a part of old Linn Street.

"5. The Urban Renewal Plan prohibited aboveground power and telephone facilities. The plan provided:

'Power and telephone service feed lines shall be underground, and the transformers shall be located in vaults within the buildings or in walled areas outside.'

"6. After the Urban Renewal Plan was approved and adopted by council, the city manager proceeded to carry out the redevelopment of the Queensgate area in accordance with the Plan. Land was acquired, buildings were demolished, old Linn Street was torn up, and construction of new Linn Street on the acquired land was begun.

"7. On April 16, 1963, plaintiff applied to the city for permit place ten poles and the necessary anchors therefor on

new Linn Street. On May 3, 1963, the city advised plaintiff that its application was rejected, because the poles and anchors conflicted with the Urban Renewal Plan.

"8. All of the actions of the city of Cincinnati set forth herein constitute an exercise of a power of local self-government granted to municipal corporations in Article XVIII, Section 3 of the Ohio Constitution. Those actions constitute the exercise of a power of local self-government other than the police power and are therefore beyond the control of any statute enacted by the General Assembly. Plaintiff has no right to demand that its lines shall be constructed in any particular place in relation to new Linn Street, to seek any determination of the mode in which its lines shall be constructed in or along new Linn Street, to question the designation in the Queensgate urban renewal plan that telephone lines in the Queensgate urban renewal area are to go underground, or to question the denial of a permit to construct poles and anchors in new Linn Street. This court has no power or jurisdiction to enforce any such demand, make any such determination, or decide any such question. Any state statute purporting to confer any such right, power, or jurisdiction is unconstitutional because it conflicts with the above mentioned provision of the Ohio Constitution.

"9. Plaintiff has not alleged the failure or inability of the plaintiff and defendant to agree upon the mode of use of Linn Street for the purpose of constructing telephone facilities.

"10. Plaintiff has not stated a cause of action.

"11. Defendant denies all allegations of plaintiff's petition not herein admitted to be true."

The court, after considering the oral arguments of counsel, and studying the memoranda submitted by counsel, sustains the plaintiff's, The Cincinnati and Suburban Bell Telephone Company's, motion as to the aforementioned two paragraphs numbered 8 and 10 and overrules the plaintiff's motion as to the other nine paragraphs contained in the defendant's, The City of Cincinnati's, answer.