The CITY OF PERRYSBURG, Appellee,

v.

TOLEDO EDISON COMPANY, Appellant.

[Cite as *Perrysburg v. Toledo Edison Co.*, 171 Ohio App.3d 174, 2007-Ohio-1327.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–06–035.

Decided March 23, 2007.

Denise M. Hasbrook and Julie Douglas, for appellant.

Theodore M. Rowen, Anastasia K. Hanson, B. Gary McBride, and Peter D. Gwyn, for appellee.

SINGER, Judge.

{¶ 1} Appellant, the Toledo Edison Company, appeals a judgment from the Wood County Court of Common Pleas, granting declaratory judgment to appellee, the city of Perrysburg. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

{¶ 2} In 2003, the city of Perrysburg sought to widen the intersection of State Route 25 and Roachton Road to accommodate the construction of a new high school. To complete the project, it was necessary to relocate electrical poles and equipment belonging to the Toledo Edison Company that were partially located within Perrysburg's right-of-way of the intersection. Perrysburg submitted a request for relocation of the equipment to Toledo Edison. Toledo Edison complied with the request and then submitted an invoice to Perrysburg in the amount of $315,698.37, the cost of the relocation. Perrysburg refused to pay for the relocation, and on March 18, 2004, Perrysburg filed a complaint for declaratory judgment seeking a declaration as to which party is responsible for the relocation costs. On May 31, 2005, Perrysburg filed a motion for summary judgment, arguing that the relocation was a valid exercise of the city's police power for which Toledo Edison is monetarily responsible. Toledo Edison filed a motion for summary judgment, arguing that Perrysburg's relocation order amounted to an unlawful taking of Toledo Edison's property. Toledo Edison based its argument on the fact that it originally placed its equipment on private easements it obtained in 1967 from Frank Eckel and Owens Illinois, Inc. On April

6, 2006, the trial court ruled in favor of Perrysburg. Toledo Edison now appeals, setting forth the following assignments of error:

{¶ 3} "I. The trial court erred in granting Perrysburg's request for declaratory judgment and summary judgment and denying Toledo Edison's cross-motion for summary judgment because the Ohio Constitution and Ohio Revised Code prohibit the taking of a utility's property located within private easements without compensation.

{¶ 4} "II. The trial court erred in granting Perrysburg's request for declaratory judgment and summary judgment and denying Toledo Edison's cross-motion for summary judgment because Toledo Edison cannot be 'ousted' entirely from its private easements without just compensation for its relocation expenses."

{¶ 5} "III. The trial court erred in granting Perrysburg's request for declaratory judgment and summary judgment and denying Toledo Edison's cross-motion for summary judgment because Toledo Edison is a third party beneficiary to the contract between Perrysburg and the Ohio Department of Transportation which mandates the utility's right to reimbursement."

{¶ 6} "IV. The trial court erred in granting Perrysburg's request for declaratory judgment and summary judgment and denying Toledo Edison's cross-motion for summary judgment because Toledo Edison is entitled to reimbursement under Ohio Revised Code 5501.51."

{¶ 7} "V. The trial court erred in granting Perrysburg's request for declaratory judgment and summary judgment and denying Toledo Edison's cross-motion for summary judgment because, in the event Toledo Edison's facilities were located on public property, Toledo Edison is still entitled to relocation assistance for the removal of its utility facilities located on public property pursuant to Ohio Revised Code 163.53."

{¶ 8} Toledo Edison's first and second assignments of error will be addressed together. Toledo Edison contends that Perrysburg's failure to pay for the relocation of the poles amounted to an unconstitutional and unlawful taking of private property for public use.

{¶ 9} On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. The motion may be granted only when it is demonstrated:

{¶ 10} "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have

the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 11} Eminent domain is defined as "[t]he inherent power of a governmental entity to take privately owned property, esp. land, and convert it to public use, subject to reasonable compensation for the taking." Black's Law Dictionary (8th Ed.1999) 541. The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, see *Penn Cent. Transp. Co. v. New York* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, guarantees that private property shall not "be taken for public use, without just compensation." Similarly, Section 19, Article I of the Ohio Constitution provides, "Private property shall ever be held inviolate, but subservient to the public welfare. * * * [W]here private property shall be taken for public use, a compensation therefor shall first be made in money * * *."

{¶ 12} "The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest, with the question necessarily requiring a weighing of private and public interests. * * * Property interests protected by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 19, of the Ohio Constitution are diverse and extend beyond actual fee ownership of real estate, and include the property owner's absolute right of dominion, use or disposition over it." *Castrataro v. Lyndhurst* (Aug. 27, 1992), 8th Dist. No. 60901, 1992 WL 209578.

{¶ 13} Generally, a public-service corporation's real estate, whether owned in fee or held as an easement, is private property and as such cannot be taken or otherwise applied to a different public use without payment of just compensation. 26 American Jurisprudence 2d (1966) 860, Eminent Domain, Section 181. However, public-service corporations are peculiarly subject to regulation under the state's police power. "Police power" has been defined as the " 'power to guard the public morals, safety, and health, and to promote the public convenience and the common good.' " *Automatic Refreshment Serv., Inc. v. Cincinnati* (1993), 92 Ohio App.3d 284, 288, 634 N.E.2d 1053, quoting *Cincinnati & Suburban Bell Tel. Co. v. Cincinnati* (P.C.1964), 7 Ohio Misc. 159, 167, 34 O.O.2d 445, 215 N.E.2d 631. State action that compels such corporations to destroy or alter lawfully erected structures is not a taking in the constitutional sense where the structures endanger public health or safety. *Fairfield v. CSX Transp., Inc.* (Feb. 12, 1996), 12th Dist. No. CA95–09–149, 1996 WL 56022, citing *New York & N.E.R. Co. v. Bristol* (1894), 151 U.S. 556, 14 S.Ct. 437, 38 L.Ed. 269.

■ {¶ 14} "The distinction between an exercise of the eminent domain power that is compensable under the fifth amendment and an exercise of the police power is that in a compensable exercise of the eminent domain power, a property interest is taken from the owner and applied to the public use because the use of such property is beneficial to the public * * * [whereas] in the exercise of the police power, the owner's property interest is restricted or infringed upon because his continued use of the property is or would otherwise be injurious to the public welfare." *Johnson v. United States* (1973), 479 F.2d 1383, 1389.

{¶ 15} The United States District Court for the Northern District of Ohio addressed a similar question in *AT & T Corp. v. Lucas Cty.* (N.D.Ohio 2005), 381 F.Supp.2d 714. The case involved the forced relocation of a telecommunications cable in an area where the county was building a new baseball stadium. As in this case, the county refused to reimburse the utility company for the relocation. In finding that AT & T was not entitled to reimbursement, the court stated:

{¶ 16} "Such deference to the public interest is in line with Supreme Court precedent on the issue. In *New Orleans Gaslight Co., v. Drainage Commission of New Orleans,* 197 U.S. 453, 462, 25 S.Ct. 471, 49 L.Ed. 831 (1905), the Court held that, when a utility company makes use of the public right of way, the municipality may require the company to relocate its equipment at its own cost when the public welfare so requires. As the Sixth Circuit stated in *Tennessee v. United States,* 256 F.2d 244, 258 (6th Cir.1958):

{¶ 17} " '[T]he law is well established that a statutory, permissive right of use of public highways by public utilities is subordinate to the rights of the public; that the original location of … facilities in a public highway does not create an irrevocable right to have such poles and facilities remain forever in the same place; and that a utility company may be required to relocate its lines at its own expense when such relocation is demanded by public necessity and for public safety and welfare.' " *AT & T Corp. v. Lucas Cty.,* 381 F.Supp.2d at 717.

{¶ 18} Here, Toledo Edison was forced to relocate its poles to make way for a highway-widening project. We find that Perrysburg's relocation order was a valid exercise of the municipality's police powers in furtherance of public safety and welfare, and for purposes of travel and transportation. Therefore, Toledo Edison is not entitled to reimbursement from Perrysburg under the doctrine of eminent domain. Toledo Edison's first and second assignments of error are found not well taken.

■ {¶ 19} In its third assignment of error, Toledo Edison contends that it was entitled to reimbursement as a third-party beneficiary of the contract between Perrysburg and the Ohio Department of Transportation ("ODOT").

{¶ 20} Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio. *Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 566 N.E.2d 1220; *Visintine & Co. v. New York, Chicago, & St. Louis R.R. Co.* (1959), 169 Ohio St. 505, 9 O.O.2d 4, 160 N.E.2d 311. A third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract. *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196, 63 O.O.2d 364, 299 N.E.2d 295. "The third party need not be named in the contract, as long as he is contemplated by the parties to the contract and sufficiently identified." Id. Moreover, the "promisee must intend that a third party benefit from the contract in order for that third party to have enforceable rights under the contract." *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 204, 540 N.E.2d 305.

{¶ 21} The Ohio Supreme Court discussed the principles underlying the rights of third-party beneficiaries in *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780, in which the high court held:

{¶ 22} "We adopt the statement of law with respect to intended and incidental beneficiaries found in Section 302 of the Restatement of the Law 2d, Contracts (1981) 439–440. Section 302 states:

{¶ 23} " '(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

{¶ 24} " '(a) * * * or

{¶ 25} " '(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

{¶ 26} " '(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.'

{¶ 27} "Comment *e* to Section 302 states:

{¶ 28} " 'Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created.' "

{¶ 29} On May 20, 2003, ODOT and Perrysburg entered into a contract to set forth requirements associated with the highway-widening project. Section V of the contract states:

{¶ 30} "Financial participation.

{¶ 31} " * * *

{¶ 32} "5. The city agrees to assume and bear one hundred percent (100%) of the entire cost of the improvement, less the amount of federal-aid funds, including TMACOG funds, set aside by the Director of Transportation for the financing of this improvement from funds allocated by the Federal Highway Administration, U.S. Department of Transportation, and further, the city agrees to assume and bear one hundred percent (100%) of the cost of preliminary engineering and right-of-way, excluding in-house preliminary engineering and right-of-way charges incurred by the state."

{¶ 33} Section VI states:

{¶ 34} "Right of way and utilities.

{¶ 35} "1. [Perrysburg] agrees that all right-of-way required for the described project will be acquired and/or made available in accordance with current state and federal regulations. [Perrysburg] also understands that right-of-way costs include eligible utility costs.

{¶ 36} " * * *

{¶ 37} "B. [Perrysburg] shall at its own expense, make all removals and/or relocations of publicly-owned utilities which do not comply with the reimbursement provisions of the ODOT Utilities Manual. Publicly owned facilities which do comply with the reimbursement provisions of the ODOT Utilities Manual will be removed and/or relocated at project expense, exclusive of betterments."

{¶ 38} Toledo Edison submitted a letter into evidence that was sent to their counsel from ODOT regarding the issue of reimbursement. The letter, signed by Interim Production Administrator Aaron D. Behrman, reads:

{¶ 39} "The district agrees that the submitted utility costs are eligible for reimbursement from the project funds as stated in Section VI:2B of the contract with the city of Perrysburg. Being that the project funds cap has been reached on this project, any and all remaining project expenses must be borne by the city of Perrysburg as outlined in Section V:5 of the contract.

{¶ 40} "The district would gladly process the utility reimbursement costs using project funds should additional monies for the project become available to the City of Perrysburg through their funding sources."

{¶ 41} The language of the contract clearly contemplates an expense to be paid to a utility in furtherance of the project, even specifically using the word "relocation." The contract together with the ODOT letter provides some evidence of an intent to make a utility, in this case, Toledo Edison, more than an incidental beneficiary to the contract. Accordingly, we find that there exists a genuine issue of material fact as to whether Toledo Edison was a third-party

beneficiary to the contract between Perrysburg and ODOT. Appellant's third assignment of error is found well taken.

{¶ 42} In their fourth assignment of error, appellant contends that it is entitled to reimbursement pursuant to R.C. 5501.51, which states:

{¶ 43} "(A) The state shall reimburse a utility for the cost of relocation of utility facilities necessitated by the construction of a highway project only in the event that the utility can evidence a vested interest in the nature of a fee interest, an easement interest, or a lesser estate in the real property it occupies in the event that the utility possesses a vested interest in such property. The utility shall present evidence satisfactory to the state substantiating the cost of relocation. The director may audit all financial records which the director determines necessary to verify such actual costs."

{¶ 44} In 1946, the state of Ohio obtained a right-of-way easement for the area of State Route 25 and Roachton Road. It was not until 1967 that Toledo Edison obtained two easements, portions of which overlapped into the State Route 25 and Roachton Road right-of-way. The document granting the Eckel easement specifically states that the easement is "subject to all legal highways." The document granting the Owens Illinois easement specifically states: "[T]his grant shall be subject to any and all existing easements or rights of way affecting the herein described property." When property rights are granted using the words "subject to," this indicates an existing right-of-way or other property interest. Thus, when Toledo Edison acquired its easements, it had notice of interests already in existence upon its land and it took the property subject to the interest. See *Kallas v. Ohio Water Serv. Co.* (1999), 132 Ohio App.3d 421, 426, 725 N.E.2d 324, citing *Wild River Adventures, Inc. v. Bd. of Trustees of School Dist. No. 8 of Flathead Cty.* (Mont.1991), 248 Mont. 397, 399–402, 812 P.2d 344. For purposes of R.C. 5501.51, we do not find that Toledo Edison had a vested interest in the property at issue. Appellant's fourth assignment of error is found not well taken.

{¶ 45} In its fifth and final assignment of error, Toledo Edison contends that it is entitled to reimbursement pursuant to R.C. 163.53(D)(1), which states:

{¶ 46} "Except as provided in section 5501.51 of the Revised Code, if a program or project undertaken by a displacing agency results in the relocation of a utility facility, and the purpose of the program or project was not to relocate or reconstruct any utility facility; and if the owner of the utility facility which is being relocated under such program or project has entered into a franchise or similar agreement with the state or local government on whose property, easement, or right-of-way such facility is located with respect to the use of such property, easement, or right-of-way; and if the relocation of such facility results in such owner incurring an extraordinary cost in connection with such relocation; then the displacing agency may, in accordance with such rules as the head of the

lead agency may adopt, provide to such owner a relocation payment which may not exceed the amount of such extraordinary cost, less any increase in the value of the new utility facility above the value of the old utility facility, and less any salvage value derived from the old utility facility."

{¶ 47} "In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus.

{¶ 48} Upon review of R.C. 163.53 in its entirety, we find no evidence of a legislative intent to have R.C. 163.53(D) construed as mandatory. The decision to reimburse a utility pursuant to the statute is within the discretion of the displacing agency, in this case Perrysburg. The court did not err in failing to order reimbursement pursuant to this statute. Toledo Edison's fifth assignment of error is found not well taken.

{¶ 49} The judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings consistent with this decision. Appellee and appellant are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, the fees allowed by law, and the fee for filing the appeal are awarded to Wood County.

Judgement affirmed in part
and reversed in part,
and cause remanded.

PIETRYKOWSKI, P.J., and SKOW, J., concur.