[Cite as *Mentor v. Cleveland Elec. Illum. Co.*, 2024-Ohio-399.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| CITY OF MENTOR,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>CLEVELAND ELECTRIC<br>ILLUMINATING COMPANY, et al.,<br><br>Defendant-Appellant. | CASE NO. 2023-L-041<br><br>Civil Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2021 CV 000312 |

**O P I N I O N**

Decided: February 5, 2024
Judgment: Affirmed

*Joseph P. Szeman*, City of Mentor Director of Law, 8500 Civic Center Boulevard, Mentor, OH 44060 (For Plaintiff-Appellee).

*Denise M. Hasbrook*, Roetzel & Andress, LPA, One Seagate, Suite 1700, Toledo, OH 43604, and *Stephen W. Funk*, Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, OH 44308 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Cleveland Electric Illuminating Company (CEI), appeals the granting of summary judgment in favor of plaintiff-appellee, the City of Mentor. For the following reasons, we affirm the decision of the court below.

{¶2} On March 16, 2021, Mentor filed a Complaint for Declaratory Judgment against CEI[1] and other defendants not parties to this appeal.

---

1. The Complaint was brought against FirstEnergy Corp., dba the Cleveland Electric Illuminating Company. The parties subsequently stipulated that Cleveland Electric Illuminating Company would be substituted for FirstEnergy Corp. as the proper party.

{¶3}    The Complaint alleged the following factual background:

13. Located in the city of Mentor is a public roadway known as Diamond Centre Drive.

14. Diamond Centre Drive is a local street subject to and under the city of Mentor's care, supervision, and control pursuant to the authority of, inter alia, Ohio Revised Code § 723.01.

15. Diamond Centre Drive was dedicated to public use in 1991 via recordation of the dedication plat, which appears in Volume 15, Page 33 of the Lake County, Ohio plat records (the "1991 Plat").

16. The 1991 Plat granted a perpetual public right-of-way for highway and utilities as follows:

> Be it known that Trask Land Development, Inc. an Ohio corporation by Jerome T. Osborne III its President does hereby dedicate to public use, as such, Diamond Centre Drive (60 feet wide), as shown hereon and not heretofore dedicated.
>
> And does also hereby grant unto the City of Mentor, the Lake County Commissioners, the Ohio Water Service Company, the Cleveland Electric Illuminating Company, the Ohio Bell Telephone Company, the East Ohio Gas Company and Continental Cablevision of Ohio, Inc., their successors and assigns (hereinafter referred to as the Grantees) and any other communication entities franchise to serve the community, a permanent right-of-way easement ten (10) feet in width, under, over and through all sublots shown hereon and delineated by dashed lines and labeled "utility easement", to construct, place, operate, maintain, repair, reconstruct, and relocate such underground electric, gas, water, sewer, and communication system cables, ducts, conduits, manholes, pipes, surface or below and above ground installed transformers, pedestal concrete pads, regulating and metering equipment, surface markers or other below and above grade facilities, fixtures and appurtenances as are necessary or convenient by the Grantees, for distributing, transmitting, and transporting electricity, gas, water, sewer and communication systems and signals for public and private use at such locations, as the Grantees may determine, upon, within and across the easement area and premises.
>
> The Grantees shall have the right without liability to remove trees, landscaping and lawns within the easement area as

2

may be required to install, maintain, repair or operate said electric, gas, waterlines, sewer and communication systems.

The Grantees shall be responsible to restore lawns, walks and drives within the easement area to as reasonable a condition as possible to the condition prior to an operation contemplated by this easement.

17. In 1996, the area of the Diamond Centre right-of-way was increased by dedication plat to provide additional width for the expansion of the road surface and other public infrastructure, said plat appearing in Volume 27, Page 26 of the Lake County, Ohio plat records (the "1996 Plat").

18. The 1996 Plat granted a perpetual public right-of-way for highway and utilities, as follows:

Be it known that Trask Properties, Ltd., an Ohio limited liability company by Jerome T. Osborne, III does hereby certify that this exhibit correctly represents the portions of land adjacent to Diamond Centre Drive to be granted as easements.

The owners of the within platted land do hereby grant unto the City of Mentor, their successors and assigns (hereinafter referred to as the Grantees), a permanent highway easement in, upon, and over all lands known and delineated by cross hatching.

The Grantees shall have the right to remove trees, landscaping, and lawns within the easement area as may be required to construct, repair, replace, maintain, operate and use a road and necessary appurtenances thereto, and forever to have and to hold such right for the purposes and conditions set forth.

The Grantees shall be responsible to restore lawns, walks and drives within the easement area to as reasonable a condition as possible to the condition prior to any operations contemplated by this easement.

The highway easements granted by this document are subject to utility easements granted by the Diamond Centre dedication plat as recorded in Volume 15, Page 33, Lake County plat records, and any other previous easements or restrictions.

3

Case No. 2023-L-041

19. The additional right-of-way dedicated by the 1996 Plat included an area over the 10' utility easement.

20. Decades of commercial development within the area and vicinity of Diamond Centre Drive has resulted in increased vehicular traffic on the roadway.

21. The increased vehicular traffic has diminished the level of service at peak times to unacceptable levels both on Diamond Centre Drive as well as its intersection with Heisley Road, which is the arterial street serving the area.

22. In order to alleviate traffic congestion and restore levels of service to acceptable levels at peak hours, the widening of Diamond Centre Drive in the area of its intersection with Heisley Road is necessary ("the Project").

23. The Project will consist of widening the Diamond Centre roadway by the addition of two turn lanes at its intersection with Heisley Road.

24. The Project is in furtherance of and necessary to the safety and welfare of the public.

25. The Project requires relocation of some existing utility infrastructure owned by some of the Defendants.

26. The existing right-of-way will fully accommodate the Project, inclusive of all public utility infrastructure required to be relocated as a consequence of the road widening.

27. The Project requires relocation of lines within the utility easement which upon information and belief are owned by Defendants FirstEnergy Corp., AT&T Corp., and Charter Communications, Inc.

28. Defendant FirstEnergy Corp. has refused to relocate its lines now within the utility easement on the grounds that (i) it is entitled to compensation for the utility easement, (ii) the city of Mentor must pay for the costs and expenses of relocation, and/or (iii) it refuses any relocation within the existing right-of-way and demands- instead that the city of Mentor appropriate and provide it a new utility easement.

{¶4}    Mentor sought "a declaration that the 1991 utility easement is a 'public way' within the meaning of R.C.§ 4939.01(N)" (Count One); "a declaration that pursuant to the authority of R.C. § 4939.08, it may in furtherance of the Project order Defendants to

4

relocate their facilities out of the subject public way and/or to adjust their facilities within the subject public way at their sole cost and expense" (Count Two); and "a declaration that pursuant to the authority of R.C. § 4939.08, the Defendants are entitled to no compensation for their loss of use of the subject public way, inclusive of compensation in the form of an in-kind replacement by virtue of the grant to them of a new 'utility easement'" (Count Three).

{¶5} On November 23, 2021, CEI filed an Answer to the Complaint and Counter Claim. CEI sought declarations contrary to those prayed for in the three Counts of the Complaint and "a writ of mandamus compelling the City to institute appropriation proceedings under R.C. 163 to determine the amount the City must pay CEI and other grantees of the 1991 Easement as just compensation for all costs associated with the taking of its property."

{¶6} On June 6 and 7, 2022, Mentor and CEI filed Motions for Summary Judgment.

{¶7} On March 27, 2023, the trial court granted Mentor's Motion for Summary Judgment and denied CEI's Motion. The court determined "as a matter of law that the utility easement is a public easement and consequently a 'public way' in accordance with R.C. 4939.01(N)." Judgment was entered in Mentor's favor with respect to its claims and CEI's counterclaims.

{¶8} On April 21, 2023, CEI filed a Notice of Appeal. On appeal, CEI raises the following assignments of error:

> [1.] The trial court committed prejudicial error by denying Appellant's Motion for Summary Judgment on its Counterclaim, declaring that the Utility Easement is a "public way" contrary to its plain language that does not entitle Appellant to just compensation.

5

[2.] The trial court erred in granting summary judgment in favor of Appellee on all counts in its Complaint for Declaratory Relief as a matter of law.

{¶9} The assignments of error will be addressed in a consolidated manner.

{¶10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). An appellate court's "review of a summary-judgment ruling is de novo." *Fradette v. Gold*, 157 Ohio St.3d 13, 2019-Ohio-1959, 131 N.E.3d 12, ¶ 6.

{¶11} As characterized by CEI, the fundamental issue in dispute "essentially involves interpretation of the plain language within the Utility Easement granted to Appellant in 1991 to declare whether it bestowed a compensable permanent, private easement upon the grantees or a public way, that would not entitle Appellant to just compensation." Assignments of Error and Brief of Defendant-Appellant at 7. As stated by the trial court, the "issue is whether the 1991 utility easement is a public easement." If, as claimed by CEI, "[t]he unambiguous language of the [1991 Plat] clearly demonstrates the intention of the drafters to convey a private utility easement to Appellant and not a public way," then, according to CEI, the easement constitutes its "'private property' that cannot be taken or otherwise applied to a different public use without payment of just compensation." Assignments of Error and Brief of Defendant-Appellant at 8. On the contrary, we find that the nature of CEI's interest in the utility easement is immaterial to whether it may be required to relocate its facilities without compensation.

6

Case No. 2023-L-041

{¶12} "Under the traditional common law rule, utilities have been required to bear the entire cost of relocating from a public right-of-way when requested to do so by state or local authorities." *Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Virginia*, 464 U.S. 30, 35, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983); *New Orleans Gaslight Co. v. Drainage Comm. of New Orleans*, 197 U.S. 453, 461, 25 S.Ct. 471, 49 L.E.2d 831 (1905) (holding that the expenses incurred by a gas company in the relocation of its pipes and mains necessitated by the construction of a municipal drainage system constituted *damnum absque injuria*: "[w]e think *whatever right* the gas company acquired was subject, in so far as the location of its pipes was concerned, to such future regulations as might be required in the interest of the public health and welfare") (emphasis added). The traditional common law rule requiring public utilities to bear the cost of relocating their facilities when requested to do so by a municipal authority acting on behalf of the public peace, health, safety, or welfare has been recognized and applied in Ohio. *In re Complaint of Reynoldsburg*, 134 Ohio St.3d 29, 2012-Ohio-5270, 979 N.E.2d 1229, ¶ 53 ("[i]n accordance with common law, utilities have been required to relocate power lines from the right of way at their own expense whenever requested to do so by state or local authorities"); *State ex rel. E. Ohio Gas Co. v. Bd. of Cty. Commrs. of Stark Cty.*, 2012-Ohio-4533, 980 N.E.2d 1056, ¶ 42 (5th Dist.) ("[t]he United States Supreme Court has held that the cost of relocation of a utility company's lines resulting from an improvement to a roadway is not a compensable taking").

{¶13} Under Ohio's precedents, the determinative issue is not the nature of the utility's interest in the easement, i.e., whether the easement is public or private, but rather the municipality's purpose in ordering the relocation of the facilities. Where the

7

municipality has been found to be acting on behalf of the public peace, health, safety, or welfare, i.e., engaged in the legitimate exercise of a governmental function, the utility company has been found not to have suffered a compensable taking. *Compare State ex rel. Speeth v. Carney*, 163 Ohio St. 159, 126 N.E.2d 449 (1955), paragraph six of the syllabus ("there is no power in a governmental subdivision to require public utilities in its public streets to relocate facilities at their own expense to accommodate the proprietary public utility operations of such subdivision, but a governmental subdivision may lawfully contract with such public utilities for reimbursement for any such necessary expenses").

{¶14} In *Perrysburg v. Toledo Edison Co.*, 171 Ohio App.3d 174, 2007-Ohio-1327, 870 N.E.2d 189 (6th Dist.), "the city of Perrysburg sought to widen [an] intersection * * * to accommodate the construction of a new high school." *Id.* at ¶ 2. "To complete the project, it was necessary to relocate electrical poles and equipment belonging to the Toledo Edison Company that were partially located within Perrysburg's right-of-way of the intersection." *Id.* Toledo Edison relocated its facilities and invoiced Perrysburg for costs. "Perrysburg filed a complaint for declaratory judgment seeking a declaration as to which party is responsible for the relocation costs." *Id.* Summary judgment was granted in Perrysburg's favor and the court of appeals affirmed. *Id.*

{¶15} The court of appeals recognized a public utility's right to just compensation where its private property is taken for public use but also that this right was subject to the exercise of a political subdivision's police power.

> Generally, a public-service corporation's real estate, whether owned in fee or held as an easement, is private property and as such cannot be taken or otherwise applied to a different public use without payment of just compensation. 26 American Jurisprudence 2d (1966) 860, Eminent Domain, Section 181. However, public-service corporations are peculiarly subject to regulation under the state's

8

police power. "Police power" has been defined as the "'power to guard the public morals, safety, and health, and to promote the public convenience and the common good.'" *Automatic Refreshment Serv., Inc. v. Cincinnati* (1993), 92 Ohio App.3d 284, 288, quoting *Cincinnati & Suburban Bell Tel. Co. v. Cincinnati* (P.C.1964), 7 Ohio Misc. 159, 167, 34 O.O.2d 445. State action that compels such corporations to destroy or alter lawfully erected structures is not a taking in the constitutional sense where the structures endanger public health or safety. *Fairfield v. CSX Transp., Inc.* (Feb. 12, 1996), 12th Dist. No. CA95-09-149, citing *New York & N.E.R. Co. v. Bristol* (1894), 151 U.S. 556, 14 S.Ct. 437.

*Id.* at ¶ 13.

{¶16} Applying the foregoing to the facts of the case before it, the court of appeals affirmed the judgment in favor of the municipality: "Here, Toledo Edison was forced to relocate its poles to make way for a highway-widening project. We find that Perrysburg's relocation order was a valid exercise of the municipality's police powers in furtherance of public safety and welfare, and for purposesof travel and transportation. Therefore, Toledo Edison is not entitled to reimbursement from Perrysburg under the doctrine of eminent domain." *Id.* at ¶ 18; *also AT & T Corp. v. Lucas Cty.*, 381 F.Supp.2d 714, 717 (N.D.Ohio 2005) ("[t]he law is well established * * * that a utility company may be required to relocate its lines at its own expense when such relocation is demanded by public necessity and for public safety and welfare") (citation omitted).

{¶17} The case of *State ex rel. E. Ohio Gas Co. v. Bd. of Cty. Commrs. of Stark Cty.*, 2012-Ohio-4533, is significant because it expressly recognized that the utility company possessed a private easement. In *E. Ohio (Stark Cty.)*, Stark County embarked on a "road widening project [that] required Dominion to remove its natural gas pipeline facilities from its private easement areas under and adjacent to Applegrove Street." *Id.* at ¶ 5. Dominion filed an action in mandamus "to compel Stark County to initiate eminent

9

Case No. 2023-L-041

domain proceedings to appropriate the private rights-of-way that were taken from it and to compensate it for the relocation expenses incurred." *Id.* at ¶ 6. Relying on the *New Orleans Gaslight* and *Norfolk Redevelopment* decisions, the court of appeals affirmed judgment in favor of Stark County. "Here, while the easement to Dominion was granted by the owner of the real property and not granted the right by a municipality, we find the reasoning to be the same in that Appellant was not granted a right to any particular location of depth to its easement and because its easement was inferior and subservient to that of the County, it should have known that changes in location might need to be made for a necessary public use." *Id.* at ¶ 44.

{¶18} The cases of *Duke Energy Ohio, Inc. v. Cincinnati*, 2015-Ohio-4844, 50 N.E.3d 1018 (1st Dist.), and *E. Ohio Gas Co. v. Youngstown*, 7th Dist. Mahoning No. 19 MA 0007, 2020-Ohio-731, both affirm the common law rule that "when a utility company makes use of the public right of way, the municipality may require the company to relocate its equipment at its own cost when the public welfare so requires." *Duke Energy* at ¶ 33, quoting *Perrysburg* at ¶ 16; *E. Ohio (Youngstown)* at ¶ 20 (same). These cases also consider the public welfare in terms of a political subdivision's governmental and proprietary functions. "A municipality cannot require public utilities using public streets to relocate their facilities at their own expense to accommodate the municipality's proprietary function." *E. Ohio (Youngstown)* at ¶ 19, citing *Speeth*, 163 Ohio St. at 177-178, 126 N.E.2d 449; *Duke Energy* at ¶ 36 ("a governmental subdivision cannot require public utilities to relocate facilities at their own expense to accommodate *proprietary utility operations* of the subdivision"). "But a municipality can require public utilities to relocate

10

Case No. 2023-L-041

their lines at their own expense in order to accommodate the municipality's governmental function." *E. Ohio (Youngstown)* at ¶ 20.

{¶19} In *Duke Energy*, the court of appeals concluded, based on legal precedent and the factual record before it, that Cincinnati's construction of a streetcar system did not bear "a real and substantial relation to the public's health, safety, morals, and general welfare." *Duke Energy* at ¶ 31. Therefore, "the City was responsible for the costs incurred by Duke to relocate its utilities to accommodate the governmentally-owned streetcar system." *Id.* at ¶ 40. The court of appeals in *E. Ohio (Youngstown)* relied on Ohio sovereign immunity law to affirm the trial court's judgment that "sewer reconstruction is a governmental activity in the interest of the public health and welfare and is an appropriate exercise of the municipality's police power" so that "Dominion was to bear the cost of relocating its pipeline." *E. Ohio (Youngstown)* at ¶ 11. In particular, the court of appeals cited the statutory definition of a governmental function as including the "planning or design, construction, or reconstruction of a public improvement," and of a proprietary function as including "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(l) and (d). Considering the facts of the case, the court of appeals found, as a matter of law, that the sewer replacement project "was more than ordinary maintenance or upkeep," but, rather, "the entire 100-year-old sewer had to be replaced and reconstructed" and so "was a governmental function." *Id.* at ¶ 37.

{¶20} Under the foregoing precedents, we find, as a matter of law, that CEI is not entitled to just compensation for any costs or expenses involved in the relocation of its facilities as a result of the widening of Diamond Centre Drive inasmuch as the street improvement constitutes a valid exercise of a governmental function in furtherance of the

11

public safety and welfare. *Perrysburg*, 2007-Ohio-1327, at ¶ 18 (utility was not entitled to reimbursement from a municipality under the doctrine of eminent domain when forced to relocate its poles to make way for a highway-widening project); *E. Ohio (Stark Cty.)*, 2012-Ohio-4533, at ¶ 46 (utility was not entitled to compensation for the relocation of its gas pipelines necessitated by a road-widening project); *compare J & J Schlaegel, Inc. v. Union Twp. Bd. of Trustees*, 2d Dist. Champaign Nos. 2005-CA-31 and 2005-CA-34, 2006-Ohio-2913, ¶ 6, 70-71 (road improvement project consisting of the relocation and reconstruction of a portion of the road deemed a governmental function pursuant to R.C. 2744.01(C)(2)(l) [the planning, design or reconstruction of a public improvement] and (e) [the maintenance and repair of roads]).

{¶21} Apart from the issue of whether a compensable taking has occurred, CEI further argues that the trial court erred by declaring the utility easement created by the 1991 Plat to be a "public way" and, in the alternative, that Mentor has no authority to order it to relocate its facilities except by the passage of a valid municipal ordinance.

{¶22} In the present case, the Mentor City Engineer, David Swiger, sent a September 28, 2020 letter to a CEI representative containing the following advisement: "In accordance with Ohio law and the Mentor Code of Ordinances, I am therefore ordering, at your company's sole cost and expense, the relocation of your facilities currently positioned along the north side of Diamond Centre Drive in the aforementioned 'utility easement' to a location within the existing highway easement, beyond the limits of the proposed roadway pavement, in accordance with the construction drawings provided to you."

12

Case No. 2023-L-041

{¶23} Mentor (as well as the trial court) relies on the Ohio Revised Code and the Codified Ordinances of the City of Mentor for the City Engineer's authority to order the relocation of CEI's facilities as part of a public way and a public right-of-way. "The City has authority under the laws and constitution of the State of Ohio, including but not limited to Article 18, Sections 3, 4, and 7, to regulate public and private entities which use the rights-of-way." Mentor Codified Ordinances 931.01(a)(5).

{¶24} The Revised Code provides: "If requested by a municipal corporation, in order to accomplish construction and maintenance activities directly related to improvements for the health, safety, and welfare of the public, an operator shall relocate or adjust its facilities within the public way at no cost to the municipal corporation, as long as such request similarly binds all users in or on such public way." R.C. 4939.08. "'Public way' means the surface of, and the space within, through, on, across, above, or below, any * * * public drive [and] public easement," but "excludes a private easement." R.C. 4939.01(N). "Such relocation or adjustment shall be completed in accordance with local law." R.C. 4939.08.

{¶25} According to local law: "A provider [of facilities for providing utility services] shall promptly and at its own expense, permanently remove and relocate facilities in the rights-of-way whenever the City finds it necessary to request such removal and relocation. * * * The City Engineer may request relocation and/or removal in order to prevent unreasonable interference by the provider's facilities with * * * [a] public improvement undertaken or approved by the City or County." Mentor Codified Ordinances 931.17(i)(1)(A). "'Right(s)-of-Way' means the surface and space in, on, above, within, over, below, under or through any real property in which the City has an interest in law or

13

equity, whether held in fee, or other estate or interest, or as a trustee for the public." Mentor Codified Ordinances 931.01(d)(41).

{¶26} CEI argues that the trial court erred in its determination that the utility easement established by the 1991 Plat constituted a "public way" under R.C. 4939.01(N) because it is a private easement. According to CEI, the granting of the "utility easement" in the 1991 Plat bestowed upon it a "private" interest in the easement independent of the interests granted to Mentor and the other utilities both named and unnamed. In support of its position, CEI notes the language "for public and private use" within the Plat. The trial court rightly rejected CEI's argument.

{¶27} The Supreme Court of Ohio has established the following principles for interpreting the scope of an easement. "When an easement is created by an express grant * * *, the extent of and limitations on the use of the land depend on the language in the grant." *State ex rel. Wasserman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.3d 664, ¶ 28. "When the terms in an easement are clear and unambiguous, a court cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties." *Id.* "The language of the easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement." *Id.*

{¶28} The trial court noted the absence of "separate instruments granting private easements to the defendants" and that the easement "was not limited to the named parties but provided for other unnamed public utilities to be added in the future * * * [which] would make little sense if the utility easement was a private easement and not a public easement." Moreover, the Plat refers to Mentor, CEI, and the other utilities collectively

14

as "the grantees." Facilities may be established "as are necessary or convenient by the Grantees" at such locations "as the Grantees may determine." Nowhere in the language of the Plat is there an indication that individual grantees possess rights distinguishable from the other grantees.

{¶29} We further note that CEI's construction of the Plat's language is forced and contrary to its obvious meaning. The 1991 Plat contained the dedication of Diamond Centre Drive "to public use" and, concomitantly, granted "a permanent right-of-way easement" to Mentor, CEI, and other utilities. That easement allows the grantees "to construct, place, operate, maintain, repair, reconstruct, and relocate" facilities for providing utility services "for public and private use." The language "for public and private use" does not qualify the nature of the grant itself, i.e., it does not grant separate public and private interests in the utility easement, but qualifies the purpose of the grant as providing services "for public and private use," i.e., for the benefit of Mentor as well as private entities and persons. Stated otherwise, the language "for public and private use" does not support CEI's claim for a private easement interest, and apart from this language, CEI cites nothing else in the Plat to support its claim.

{¶30} Finally, the context or "surrounding circumstances" of the easement establish its public character. At the time of the dedication of Diamond Centre Drive in 1991, the Mentor Codified Ordinances (then the Mentor Code of Ordinances) provided that "[e]asements ten feet in width shall be provided adjacent to each side of and contiguous with all proposed rights-of-way" and "[s]uch easements shall be usable for any and all underground utilities." Mentor Code of Ordinances 152.063. In accordance with this provision, the dedication of Diamond Centre Drive also contained the grant of "a

15

Case No. 2023-L-041

permanent right-of-way easement ten (10) feet in width" located on both sides of the Drive for underground (as well as above ground) facilities. Furthermore, the mandated right-of-way easement is regulated by Mentor to a degree inconsistent with a private interest. Mentor's Codified Ordinances assert that "right[s]-of-way are acquired, constructed and maintained at significant expense to the City's taxpayers," and so constitute "a valuable and limited resource which must be utilized to promote the public health, safety, and welfare including the economic development of the City." Mentor Codified Ordinances 931.01(a)(3) and (1). As noted above, Mentor claims the "authority * * * to regulate public and private entities which use the rights-of-way." Mentor Codified Ordinances 931.01(a)(5). Accordingly, "[e]ach person [both natural and corporate] who occupies, uses, or seeks to occupy or use the rights-of-way to operate a system in the rights-of-way * * * shall apply for and obtain a Certificate of Registration" and is subject to a "priority of use of rights-of-way" as established by Mentor. Mentor Codified Ordinances 931.02(b) and 931.01(a)(7)(F).

{¶31} Accordingly, we find no error in the trial court's determination that the utility easement created by the 1991 Plat constituted a public easement and, thus, a "public way" as defined in R.C. 4939.01(N). *Compare* 28A Corpus Juris Secundum, Easements, Section 11 (August 2023 Update) ("[i]n every instance of a private easement, that is, an easement not enjoyed by the public, there exists the characteristic feature of two distinct tenements, one dominant and the other servient; public easements on the other hand are in gross, and in this class of easements there is no dominant tenement").

{¶32} CEI argues in the alternative that, if this Court determines that the utility easement is a public way, "this Complaint must be dismissed because the issues are not

16

ripe until the City first passes a valid ordinance ordering relocation." Reply Brief of Defendant-Appellant at 6. Stated otherwise, CEI maintains that Mentor has no authority to order it to relocate its facilities except by the passage of a valid municipal ordinance.

{¶33} Mentor Codified Ordinance 931.17(i)(1)(A), quoted above, plainly states that the City Engineer may request a utility to relocate its facilities within a right-of-way. As contrary authority, CEI cites R.C. 727.23 which provides that a legislative authority undertaking a public improvement "shall pass an ordinance." The full context of the statute is as follows:

> The legislative authority of a municipal corporation which has adopted a resolution under section 727.12 of the Revised Code declaring the necessity for a public improvement shall * * * determine whether or not it will proceed with the proposed improvement.
>
> In the event the legislative authority determines to proceed with the improvement it shall pass an ordinance which shall:
>
> > (A) State the intention of the legislative authority to proceed with the improvement in accordance with the provisions of the resolution of necessity adopted under section 727.12 of the Revised Code;
> >
> > (B) Adopt the estimated assessment prepared and filed in accordance with the resolution of necessity passed under section 727.12 of the Revised Code * * *;
> >
> > (C) State whether or not claims for damages * * * shall be judicially inquired into before commencing or after completing the proposed improvement.

R.C. 727.23. The "resolution of necessity" is a resolution mandated by the Revised Code "[w]hen it is deemed necessary by a municipal corporation to make a public improvement to be paid for in whole or in part by special assessments levied under [Chapter 727]." R.C. 727.12.

17

Case No. 2023-L-041

{¶34} Mentor (as well as the trial court) properly found R.C. 727.23 inapplicable inasmuch as the widening of Diamond Centre Drive is not being funded by special assessments pursuant to R.C. Chapter 727. According to the uncontradicted affidavit of Mentor's City Engineer: "The Project is not being financed by any special assessments. It is being financed solely through grants and revenues received from a tax increment financing program."

{¶35} CEI cites *Link v. FirstEnergy Corp.*, 147 Ohio St.3d 285, 2016-Ohio-5083, 64 N.E.3d 965, for the proposition that a utility may not be required to move its facilities in the absence of a valid ordinance directing it to do so. In *Link*, a motorcyclist filed suit against an electric company after striking one of the company's utility poles and suffering injuries. The motorcyclist claimed the company was liable for negligence and nuisance after failing to relocate its pole as requested by the county engineer and the chairman of the board of township trustees. The Supreme Court concluded that the placement of the utility pole was sanctioned under the applicable law and, conversely, that "no 'applicable law' required CEI and FirstEnergy to move the pole from its current location." *Id.* at ¶ 28. "Indeed, the county engineer acknowledged that he did not have authority to order the relocation of utility poles." *Id.* at ¶ 30. The letter sent by the board's chairman was just a letter and, "without more, does not have the force of law." *Id.* at ¶ 31. The Supreme Court concluded that, "[a]bsent a resolution or other affirmative legal action from the board, no provision of Ohio law required CEI and FirstEnergy to move the involved pole or to obtain a permit to leave the pole involved in Link's accident in its existing location." *Id.* at ¶ 33.

{¶36} We agree with Mentor that *Link* is distinguishable. In *Link*, unlike the present case, the utility pole was located on a township right-of-way rather than a

18

municipal right-of-way. In *Link*, the Supreme Court found the relevant statute to be R.C. 5571.14, which authorizes a board of township trustees to declare that "an object bounding a township road" to be a public nuisance and order its removal. *Id.* at ¶ 32. Unlike the county engineer in *Link*, the City Engineer in the present case was expressly authorized by municipal law to order the relocation of CEI's facilities, citing the relevant state statutes and municipal ordinances in his September 28, 2020 letter. *See also* Mentor Codified Ordinances 931.02(a) ("[t]he City Engineer shall be the principal City official responsible for the administration of this Chapter [931 Rights of Way Administration])".

{¶37} In conclusion, all the issues raised by Mentor's Complaint and CEI's Counterclaim were properly before and ruled upon by the trial court. The court rightly declared that (1) the 1991 utility easement is a public way, (2) Mentor could order CEI to relocate its facilities at CEI's expense, (3) and CEI is not entitled to public compensation for the costs of relocation; and rejected CEI's claim to order the institution of appropriation proceedings.

{¶38} CEI's assignments of error are without merit.

{¶39} The Concurring Opinion would have this Court "adopt the reasoning and authorities set forth in the related case of *Mentor v. AT&T Corp.*, 11th Dist. Lake No. 2023-L-060." In *AT&T*, this Court recognized that "the public vs. private nature of the utility easement was immaterial to whether CEI 'may be required to relocate its facilities without compensation.'" *Id.* at ¶ 31. In *AT&T*, however, this Court "conclude[d] the public/private nature of the 'utility easement' can be material, is so, and results in the same answer." *Id.* That answer was that AT&T's "entitlement to compensation for the relocation of its

19

utility facilities is not based on 'the nature of the utility's interest in the easement, i.e., whether the easement is public or private, but rather the municipality's purpose in ordering the relocation of the facilities.'" *Id.* at ¶ 42, citing *CEI* at ¶ 13. Since this is the "same answer" for essentially the same reasons, there is no compelling reason for adopting the "reasoning and authorities" of *AT&T*. The two Opinions are consistent with each other.

**{¶40}** For the foregoing reasons, the judgment of the lower court is affirmed. Costs to be taxed against the appellant.


ROBERT J. PATTON, J., concurs,

MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.


_____


MARY JANE TRAPP, J., concurs in judgment only with a Concurring Opinion.

**{¶41}** I respectfully concur in judgment only. Contrary to the majority, I do find that the nature of CEI's interest in the utility easement is material to the outcome of this case. Majority opinion at ¶ 11. I would adopt the reasoning and authorities set forth in this court's opinion in *Mentor v. AT&T Corp.*, 11th Dist. Lake No. 2023-L-060, and overrule CEI's assignments of error on those bases.

Case No. 2023-L-041